IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SHELBY MILLER § | |
| § | |
| v. § | |
| § | Case No. 2:20-cv-152-RSP |
| COMMISSIONER, SOCIAL § | |
| SECURITY ADMINISTRATION | |

**MEMORANDUM RULING**

On October 10, 2019, Administrative Law Judge Charlotte A. Wright issued a decision finding that Petitioner Shelby Lynne Miller was not disabled within the meaning of the Social Security Act from April 1, 2017 through the date of the decision.  Ms. Miller, who was 20 with a high school education and two years of culinary school[1] at that time, was found to be suffering from severe impairments consisting of attention deficit hyperactivity disorder (ADHD), anxiety, and major depressive disorder. These impairments resulted in restrictions on her ability to work. At the time of the hearing, Petitioner was working 15 to 20 hours per week as a hostess at the Catfish King restaurant, which began in May 2019.  Tr. 32, 34.  Petitioner had been awarded supplemental security income benefits as a child based on disability.  However, upon attaining age 18, the regulations require that her eligibility for continued SSI benefits be redetermined under the rules for determining disability for adults.

---

[1] Petitioner argues in her Brief that "the culinary arts course was merely an elective in high school," but Petitioner testified at the hearing that she graduated from a two-year college culinary arts program at Texarkana College in May of 2019. Tr. 35-36.  Her cited high school records (Tr. 361) do show that she started her culinary program in her senior year of high school (by "college release"), but she graduated from high school in May 2018 and completed the culinary program at Texarkana College in May 2019.

1

After reviewing the medical records and receiving the testimony at the July 16, 2019 video hearing, at which Petitioner was represented by her counsel Greg Giles, the ALJ determined that Petitioner had the residual functional capacity to perform a full range of work at all exertional levels, but that she had the following non-exertional limitations:  she can perform simple, routine, and repetitive tasks and simple, work-related decision-making.

Relying upon the testimony of a vocational expert, Phunda P. Yarbrough, the ALJ determined that Petitioner had the capacity to perform certain jobs that exist in significant numbers in the national economy, such as hospital cleaner, meat clerk, and price marker.  This finding resulted in the determination that Petitioner was not entitled to Social Security benefits.  Petitioner appealed this finding to the Appeals Council, which denied review on May 4, 2020.  Petitioner timely filed this action for judicial review seeking remand of the case for award of benefits.

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. See  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). Substantial evidence is more than a scintilla, but can be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir.1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983)). In reviewing the substantiality of the evidence, a court must consider the record as a whole and "must take into

account whatever in the record fairly detracts from its weight." *Singletary v. Bowen,* 798 F.2d 818, 823 (5th Cir.1986).

Petitioner raises two issues on this appeal:

1. The ALJ erred in finding Petitioner reached medical improvement on April 1, 2017, ignoring the opinions of her treating physicians, and

2. The ALJ erred in finding Petitioner could perform a full range of work at all exertional levels.

*Issue No. 1:*

This issue deals with the adequacy of the ALJ's expressed reasons for discounting the opinion of Petitioner's mental health counselors. Beginning on May 11, 2017, Petitioner was seen on a biweekly basis by Dr. Rafael F. Otero, Ph.D and a counselor in his office, Luretha Loudermill. Tr. 575. On July 24, 2018, Ms. Loudermill completed a Mental Residual Functional Capacity Assessment form indicating that Petitioner had either marked or extreme limitations in most of the 21 sub-categories considered under the four general headings of "understanding and memory," "sustained concentration and persistence," "social interaction," and "adaptation." Tr. 575-578. The ALJ stated that she "gives no weight to the May 2017 opinion from Rafael F. Otero, Ph.D. and Luretha Loudermill, the claimant's treating psychological clinicians." Tr. 19. She observes that "Although this opinion is provided by the claimant's treating psychological clinicians, it is inconsistent with the record as a whole." The ALJ follows with a lengthy discussion including: the largely normal findings by the consultative examining psychologist, Dr. Grant; Petitioner's high school placement in special education classes only for English; Dr. Otero's earlier treatment notes showing largely normal mental status findings; and the observations of Petitioner's primary care physician, Dr. Ted Trimble. Dr. Trimble had noted on March 25, 2019 that her primary

3

diagnosis was ADHD and that "patient is doing well with her current medication regime." Tr. 589.

The ALJ also commented at length on the psychological consultative examination report of Dr. David Grant, Ph.D., from April 2017. Tr. 18. Dr. Grant found that Petitioner's "judgment was good," that she "communicated effectively," that she is "able to understand, carryout, and follow instruction," that her "remote and immediate memory were both adequate," that she "denies any depression, anxiety issues or anxiety attacks," and that her "concentration and persistence were adequate, and she worked at a good pace." Tr. 527-530. However, Dr. Grant also found that "It is not likely that she would respond appropriately to work pressure in a work setting due to attentional problems" and that "Her ability to tolerate stress associated with competitive work and make reasonable occupational adjustments is poor." Tr. 530. The ALJ assigned less weight to the latter findings, in view of the former findings noted above. She also observed that at the time of Dr. Grant's examination Petitioner was only in the 11th grade, was not yet driving or working.

On the other hand, more than two years later, when Petitioner testified before the ALJ, she had graduated from a two-year college culinary arts program, was driving daily, worked as a hostess 15-20 hours per week, and had experienced no panic attacks at work. Tr. 35-45.

The Fifth Circuit has long held that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985). However, "[T]he ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990). Thus, the Fifth Circuit has held that:

4

> "when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence."

*Scott v. Heckler*, 770 F.2d 482 at 485 (5th Cir. 1985).

The Court takes seriously the weight that is to be given to the opinions of treating physicians. However, the Court agrees with the ALJ that opinions recorded by Dr. Otero's office on the Mental RFC Assessment are inconsistent with the rest of the record. For example, the "extreme" limitations noted on "ability to accept instructions and respond appropriately to criticism from supervisors," "the ability to respond appropriately to changes in the work setting," and the "ability to tolerate normal levels of stress," to name a few, are completely inconsistent with the medical records and with the fact that she has completed a college program and is working part-time successfully. The Court cannot conclude that the ALJ lacked a sufficient basis to discount the July 24, 2018 assessment. The Court finds that substantial evidence supports the mental capacity determination of the ALJ.

*Issue No. 2:*

Petitioner argues in this second issue that the ALJ failed to account for her exertional limitations in the residual functional capacity determination. Petitioner testified at the hearing that two things kept her from working full-time: not being able to stand on her feet "for long periods of time," and needing bathroom breaks, due to her ulcerative colitis, "two to three times a day" for "10 to 15 minutes" each. Tr. 36-37. Petitioner's brief does not point to any evidence in the record to support these limitations other than her own testimony at the hearing. As the ALJ pointed out in her decision, Petitioner alleged only three conditions as disabling: ulcerative colitis,

5

ADD/ADHD, and bipolar disorder.  Tr. 16.  There is no medical evidence identified by Petitioner that she has a condition that impairs her ability to walk or stand.

The ALJ did address the medical evidence concerning Petitioner's ulcerative colitis.  Her treating gastroenterologist, Dr. Olosunde, noted in his March 14, 2018 report that "the problem is controlled."  Tr. 553.  No medical provider has recommended any restrictions on her activities.  Even Petitioner's own testimony is just that she needs 2 or 3 10-15 minute breaks per day.  The Social Security regulations contemplate an 8-hour workday with a break every two hours, 15-minute breaks before and after lunch, with an hour for lunch.  Thus even crediting her own testimony, without requiring medical corroboration, her colitis does not impair her capacity to perform work at all exertional levels.  As the ALJ pointed out, this conclusion is also supported by the March 28, 2017 findings of Dr. Charles M. Murphy, M.D., a state agency medical consultant, that Petitioner's obesity and colitis are non-severe.  Tr. 13, 59.  The October 17, 2017 report of Dr. Colleen Ryan, M.D., a second medical consultant, is to the same effect.  Tr. 67.

Accordingly, the Court determines that the residual functional capacity determination by the ALJ is supported by substantial evidence.

*Conclusion:*

Having determined that the decision of the Commissioner is supported by substantial evidence, the ruling below is affirmed and the action is dismissed.

**SIGNED this 31st day of March, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE